Barry E. Mallen, Esq. [SBN 120005]
David A. Carnie, Esq. [SBN 320709]
**LEVINSON ARSHONSKY & KURTZ, LLP**
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Telephone:  (818) 382-3434
Facsimile:   (818) 382-3433
E-Mail:      bmallen@laklawyers.com
             dcarnie@laklawyers.com

Attorneys for Defendants and Counter-Claimants Jefferson Starship, Inc. and Shiprats, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CHAQUICO, an individual, | CASE NO. 3:22-CV-04907-RS |
| Plaintiff, | **COUNTERCLAIM OF JEFFERSON STARSHIP, INC. AND SHIPRATS, INC.** |
| vs. | **[DEMAND FOR JURY TRIAL]** |
| JEFFERSON STARSHIP INC., a California corporation; STARSHIP, INC., a California corporation; SHIPRATS, INC., a California corporation; JEFFERSON AIRPLANE INC., a California corporation; AFTERTHOUGHT PRODUCTIONS CORP., a California corporation; SONY MUSIC ENTERTAINMENT DIGITAL, LLC, a CALIFORNIA limited liability corporation WARNER MUSIC GROUP CORP. DBA RHINO ENTERTAINMENT, a DELAWARE CORPORATION; WARNER MUSIC GROUP CORP dba WARNER-TAMERLANE PUBLISHING CORPORATION, a DELAWARE CORPORATION; WIXEN MUSIC PUBLISHING, INC., a California corporation; STEPHANI THOMSON, EXECUTOR OF ESTATE OF WILLIAM CARL THOMPSON TYRONE THOMPSON, REPRESENTATIVE OF WILLIAM CARL THOMPSON; BILL GRAHAM ARCHIVES, LLC DBA WOLFGANG'S VAULT, a DELAWARE limited liability company; JEFF JAMPOL, an individual; JAMPOL ARTIST MANAGEMENT a California corporation; ALEXANDER KANTNER, SUCCESSOR IN INTEREST TO ESTATE OF PAUL LORIN KANTNER; MICKEY THOMAS, an individual; DAVID FREIBERG, an individual; CATHERINE RICHARDSON, an individual; DONNY BALDWIN, an individual; AND DOES 1-50, INCLUSIVE | |
| Defendants. | |

JEFFERSON STARSHIP, INC. AND SHIPRATS, INC.,

        Counter-Claimants,

vs.

CRAIG CHAQUICO, an individual,

        Counter-Defendant.

## THE PARTIES

1.     Counter-Claimant Jefferson Starship, Inc. ("JSI") is the owner of the intellectual property and other musical assets of the recording groups Jefferson Starship and Starship (collectively, the "Band"), and is the signatory to many of the recording agreements through which the recordings of Jefferson Starship and Starship have been distributed and exploited. JSI is also a party to the 1991 Termination Agreement whereby Cross-Defendant withdrew from the Band. JSI is a California corporation with its principal place of business in San Rafael, California.

2.     Counter-Claimant Shiprats, Inc. ("Shiprats") is a party to certain recording agreements related to the distribution of the recordings of Jefferson Starship and/or Starship and is a party to the 1991 Termination Agreement whereby Cross-Defendant withdrew from the Band. Shiprats is a California corporation with its principal place of business in Northern California.

3.     Counter-Defendant Craig Chacquico ("Chaquico") is an individual who resides in Jackson County, Oregon. Chaquico is one of the founding members, and guitarist of, the recording group Jefferson Starship, who also played guitar for the band Starship. Chacquico withdrew from the Band pursuant to a 1991 Termination Agreement with JSI and Shiprats that sets forth how he is to be paid royalties in connection with the exploitation of the Jefferson Starship and Starship recordings that Chaquico played on.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Chaquico, who regularly conducts business and enters into contracts within this District.

5.     Venue is proper in this District pursuant to 28 U.S.C. section 1391.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Chaquico was one of the founders of, and lead guitarist for, the recording groups Jefferson Starship and Starship.

7. The band Jefferson Starship formed in 1974, changing its name to Starship in 1985. Between 1974 and 1989 the Band released approximately 11 different studio albums ("Albums") pursuant to a series of recording agreements with the record label RCA Records ("RCA") (the "Recording Agreements").

8. There were multiple lineup changes to the Band over that 15 year period, with at least 11 different members contributing to the Albums.

9. Pursuant to a series of agreements among the members, band entities and/or RCA, certain royalties payable to the band entities in respect of the exploitation of the Albums (and recordings thereon) were to be divided among the various band members (and other participants) in certain agreed upon shares.

10. As such, Chaquico is one among many participants entitled to shares of such royalties.

11. Historically, the band entities distributed all such royalties to these various third party participants, retaining no share for the entity itself. In some cases, the band entities arranged for direct payment of royalties by RCA to various participants.

12. In or about November 2018, all rights to the Albums reverted to the band entities, which in turn negotiated a new and improved agreement with a new distributor (pursuant to an exclusive term license agreement). That began a transition period where the Albums were moved from RCA to the new distributor (Rhino), during which significant research was conducted as to the various participants' royalty entitlements in respect of same.

13. The results of that research were communicated to the various participants, including Chaquico, as to their respective shares of royalties.

14. The new Rhino agreement provided for payment of significant advances to the band entities (against future royalties payable thereunder). As of the date hereof, the overall band royalty account is still unrecouped (i.e., no further royalties or other monies are payable by Rhino unless and

until earned royalties exceed the advances previously paid by Rhino) and it is expected that the Rhino account will not be in a recouped position for another year or two.

15. As for the advances paid by Rhino, the band entities distributed a net share of same to the participants (including Chaquico, who received one of the largest such distributions among all band member participants), after deduction off the top of all costs associated with securing, collection and distribution of such monies (i.e., management commissions and legal and accounting fees paid by the band entities in respect of the negotiation of the new Rhino agreement, the transition of such Albums from RCA to Rhino, and ascertaining the participant entitlements and devising a system to distribute same).

16. While other band member participants acknowledged and accepted the methodology for such royalty distributions, Chaquico objected to various aspects of same, including the deduction of costs in calculating his share.

17. Chaquico's position is that he is entitled to his share of gross royalties payable by the distributor (including a share of the new higher rates secured by the band entities under the Rhino agreement), but that no costs could be deducted in the calculation of Chaquico's share.  Such position is contrary to the agreements and the prior practice of the band entities over the course of decades, and would serve to unfairly advantage Chaquico over all of the other band member participants.  Indeed, since the band entities do not retain any share of the royalties, there would be no monies to cover the costs that were necessary to secure the new and improved Rhino deal and determine/administer the respective entitlements of the many participants.  In effect, Chaquico's position would impose such costs on the other band members to his sole advantage.  This is contrary to the practice of the band members and band entities over decades, by distributing net receipts after deduction of costs (including the cost of third party royalties to producers of the Albums).

18. Moreover, in 1985, and again in 1991 (the 1991 Termination Agreement), Chaquico entered into agreements with various of the band entities confirming, ratifying and reaffirming the practice of the band entities and the members of the band that in determining the share of royalties to be distributed to participants that all costs associated with the exploitation of the various albums and

recordings must first be deducted off the top, such that all participants bear their pro-rata share of all such costs that contributed to the revenue which is to be divided among the participants.

19. Due to the dispute with Chaquico over the computation of royalty entitlements, the band entities have been unable to complete the process to arrange for direct royalty accountings from Rhino to the band member participants. As such, while significant shares of the advances have been distributed to the band member participants (including Chaquico), unless and until the dispute with Chaquico is resolved, the band entities are unable to complete these efforts to account for actual royalties earned under the Rhino agreements as the relative entitlements for each member cannot be determined until they are resolved for all members (though to this point, as noted no further royalties would be due in any event since the initial Rhino advances have yet to be recouped).

**FIRST CLAIM FOR RELIEF**

(For Declaratory Relief)

20. Counter-Claimants repeat and reallege paragraphs 1 - 19.

21. A dispute now exists as between Chaquico, on the one hand, and Defendants, on the other, in that Chaquico contends that the artist royalties and other income payable to him pursuant to the 1991 Termination Agreement should not be subject to the deduction of costs and expenses that Chaquico has historically borne, and which the other participants also bear, such that Chaquico is seeking to be placed in a position that unfairly benefits him at the expense of the other participants. Defendants, on the other hand, contend that Chaquico must bear his pro-rata share of all costs and expenses, just as the other participants do, and just as Chaquico has always done in the past. Defendants also contend that the claims asserted by Chaquico are barred in part by the applicable statute of limitations, which Chaquico disputes.

22. As such, a declaratory judgment is needed to establish the parties' rights and obligations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Counter-Claimants pray for judgment on their Counterclaim as follows:

1. For a Declaratory Judgment that all costs and expenses are to be deducted prior to the calculation of any royalties which may become due to Chaquico, such that he is treated the same as

the other participants and not placed in a position which unfairly advantages him over the other participants and that, additionally, the claims asserted by Chaquico in this case are barred in part by the applicable statute of limitations.

  2. For Costs of Suit;

  3. For such other and further relief as the Court deems just and proper;

Dated: December 28, 2022    LEVINSON ARSHONSKY & KURTZ, LLP

By:  /s/ *Barry E. Mallen*
   Barry E. Mallen
Attorneys for Defendants and Counter-Claimants
Jefferson Starship, Inc. and Shiprats, Inc.

### DEMAND FOR JURY TRIAL

Cross-Complainants hereby demand a jury on all claims properly triable to a jury.

Dated: December 28, 2022    LEVINSON ARSHONSKY & KURTZ, LLP

By:  /s/ *Barry E. Mallen*
   Barry E. Mallen
Attorneys for Defendants and Counter-Claimants
Jefferson Starship, Inc. and Shiprats, Inc.

# CERTIFICATE OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Los Angeles, State of California. My business address is 15303 Ventura Blvd., Suite 1650, Sherman Oaks, CA 91403.

☒ **(BY CM/ECF SYSTEM)** On December 28, 2022, I caused to be electronically filed the following document(s) described as: **COUNTERCLAIM OF JEFFERSON STARSHIP, INC. AND SHIPRATS, INC. and [DEMAND FOR JURY TRIAL]** with the Clerk of the United States District Court of Northern District of California, using the *CM/ECF* System. The Court's *CM/ECF* System will send an e-mail notification of the foregoing filing to the following parties (or on the attached service list) and counsel of record who are registered with the Court's *CM/ECF* System:

- **Cagil Arel**
  cagilarel@kroghdecker.com,josegutierrez@kroghdecker.com
- **David Aaron Carnie**
  dcarnie@laklawyers.com,aboone@laklawyers.com
- **Derek Charles Decker**
  derekdecker@kroghdecker.com,gabriellacavazos@kroghdecker.com
- **Crystal Huynh-Kim**
  crystalhuynhkim@kroghdecker.com,petervue@kroghdecker.com
- **Barry Edward Mallen**
  bmallen@laklawyers.com,sgrindstaff@laklawyers.com

☐ **(BY MAIL)** On the date below, I caused to be placed in an envelope for collection and mailing following our ordinary business practices the following documents described as: ** I am readily familiar with firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid on the following (or on the attached service list):

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2022 at Sherman Oaks, California.

| Natalie M. Lessard | */s/ Natalie M. Lessard* |
|---|---|
| | *Signature* |